**REMAND/JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 14-5562-GW(ASx) | Date | September 11, 2014 |
|---|---|---|---|
| Title | *Laura Lucio v. Jenni Rivera Enterprises, Inc. et al* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  
Walter F. Wiggins, Jr.

Attorneys Present for Defendants:  
Anthony R. Lopez  
George Lewis Prajin

PROCEEDINGS: **PLAINTIFF'S MOTION TO REMAND AND FOR COSTS ON GROUNDS OF DEFECTIVE REMOVAL [10]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Plaintiffs' motion is GRANTED IN PART and DENIED IN PART. The Court hereby remands this action to the Los Angeles County Superior Court (EC61972). The Court DENIES costs pursuant to § 1447.

:   04

Initials of Preparer   JG

<u>**Laura Lucio v. Jenni Rivera Enter., Inc., et al.**</u>; Case No. CV-14-5562-GW(PJWx)
Tentative Ruling on Motion to Remand

In February 2014, Plaintiff Luara Lucio ("Lucio") filed suit in state court against Defendants Jenni Rivera Enterprises, Rosie Rivera Flores ("Flores"), and Ayana Musical, Inc. (collectively, "Defendants"). *See* Compl., Docket No. 1, at Ex. A.[1] Several months later, Defendants removed the case to this Court, arguing that Lucio's recently-served discovery responses revealed that her conversion claim was completely preempted by the Copyright Act. *See* Removal Notice, Docket No. 1, ¶ 6. Less than 30 days after the case was removed, Lucio moved to remand the case, arguing that removal was untimely because complete preemption was ascertainable from her pleadings and other discovery responses more than 30 days before Defendants removed the case. *See* Remand Motion ("Mot."), Docket No. 10. Defendants opposed. *See* Opposition to Remand Motion ("Opp."), Docket No. 12. For the reasons below, the Court would REMAND the action but DENY costs and fees.

## I. Background

In February 2014, Lucio filed suit against Defendants in state court. Among other things, her Complaint alleged she and Jenni Rivera, the late Mexican-American pop star, agreed to collaborate on a book about Jenni Rivera's life called "Mi Vida Loca." *See* Compl. ¶¶ 9-10. Though the book was never published, between 2005 and 2012, Lucio recorded interviews about Jenni Rivera's life, wrote notes, and completed at least one draft of the book, all of which she saved on Jenni Rivera's computer. *Id.* ¶¶ 10-14, 19. In late 2012, Jenni Rivera died in a plane crash. *See* First Amended Complaint ("FAC"), Docket No. 1, at Ex. C ¶ 35. After the crash, Lucio met with several members of Jenni Rivera's family, including Flores. Compl. ¶ 18. During one of those meetings, Flores asked Lucio to send her a "sample" of the first chapter. *Id.* Shortly after, Lucio learned that Defendants were releasing a book about Jenni Rivera's life called "Unbreakable." *Id.* ¶ 19. According to Lucio,

> [F]ully 95% of the book "Unbreakable" consists of [Lucio's] writings developed during her collaboration with Jenni Rivera on their book project ("Mi Vida Loca"). These writings resided on Jenni Rivera's computer, having been saved there during the times [Lucio] and Jenni Rivera would meet and review chapters for the book project. [Lucio] is the author of these writings, not Jenni Rivera. [Lucio's] writings were essentially stolen by Defendants and used to publish the book "Unbreakable."

*Id.* Lucio's fifth cause of action, ostensibly for "conversion," alleges:

> [Lucio] had a right to possess all of her notes and writings generated during the course of her collaboration with Jenni Rivera on the book project ("Mi Vida Loca"). Defendants intentionally and substantially interfered with [Lucio's] property by taking possession of and preventing [Lucio] from having access to her notes and writings, and

---

[1] The initial Complaint also named several other defendants who were later dismissed.

>   benefitting therefrom with knowledge that said notes and writings did not belong to them and were the rightful property of [Lucio]. [Lucio] did not consent to the taking of her notes and writings. [Lucio] was harmed in an amount not less than USD $5,000,000 by Defendants' conduct[.]

*Id.* ¶¶ 45-48. Lucio's Complaint never contends that Defendants took notes and writings that were within her physical possession and only seeks money damages, not a return of her notes and writings.

After a demurrer, Lucio filed the FAC, which contained similar allegations for the conversion claim, albeit with more detail and without a specific dollar demand. FAC ¶¶ 36-40, 83-90. Again, Lucio never claimed Defendants took writings within her physical possession and only sought money damages, not a return of her notes and writings. *See id.*

While Defendants argue Lucio's conversion claim is completely preempted by the Copyright Act, they contend they could not definitively ascertain complete preemption from the documents served in the action until either June 16, when Lucio served her opposition to Defendants' second demurrer, or June 26,[2] when Lucio served her responses to Defendants' Special Interrogatories. Opp. at 21:17-23:16. Lucio appears to concede her conversion claim is completely preempted, but argues removal is untimely since complete preemption was ascertainable from the face of her pleadings, or, at a minimum, from discovery responses served on Defendants in April. *See* Reply, Docket No. 16.

## II. Applicable Law

"In deciding whether to remand a case, [courts] must determine whether the case was properly removed[.]" *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F.Supp.2d 932, 936 (C.D. Cal. 2011). The right to remove a case to federal court is entirely a creature of statute. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statutes impose both procedural and jurisdictional requirements. 28 U.S.C. § 1447(c); *Gray v. Moore Bus. Forms, Inc.*, 711 F.Supp. 543, 544 (N.D. Cal. 1989) ("A[n] action will be remanded to state court for two reasons: (1) lack of subject matter jurisdiction; and (2) procedural defects in the removal process"). Because "[i]t is presumed that a cause lies outside the limited jurisdiction of federal courts," *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (quotations omitted), and because the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," the defendant always has the burden of establishing that he or she has satisfied both the procedural and jurisdictional requirements for removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

As relevant here, the procedural requirements include two limitations on the time for removal. *See* 28 U.S.C. § 1446(b); *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013) ("[T]he two periods specified in § 1446(b)(1) and (b)(3) operate as limitations on the

---

[2]Defendants contend removability was first ascertainable on June 28, when they *reviewed* the discovery responses, but the second 30-day removal period starts to run when the defendant *receives* the paper from which removability can be ascertained. 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days *after receipt by the defendant*, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable") (emphasis added). Thus, even assuming that Lucio's discovery responses were the first paper from which removability could be ascertained, the time period for removal would run from June 26, not June 28.

right to removal").[3] Under 28 U.S.C. § 1446(b)(1), a defendant must remove within 30 days of receiving an initial complaint if, *on its face*, the complaint alleges all of the information necessary to establish federal subject matter jurisdiction. *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013) ("The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face"); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, [but] the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010) (quoting 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which [removability] may first be ascertained")). In ascertaining removability, the defendant "need not make extrapolations or engage in guesswork," but he or she must "apply a reasonable amount of intelligence." *Kuxhausen*, 707 F.3d at 1140 (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2nd Cir. 2001)). If the initial pleading is not removable on its face and the defendant has not yet received a document from which removability can be ascertained, the defendant *may* remove at any point after "discover[ing], based on its own investigation, that a case is removable." *Roth*, 720 F.3d at 1123 ("[A] defendant who has not lost the right to remove because of a failure to timely file a notice of removal under § 1446(b)(1) or (b)(3) may remove to federal court when it discovers, based on its own investigation, that a case is removable").[4]

In addition to requiring timeliness, the removal statutes also require that defendants show the removed action falls within the federal court's original subject matter jurisdiction. 28 U.S.C. § 1441(a); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("[T]he defendant always has the burden of establishing that removal is proper"). Here, Defendants removed on complete preemption grounds, arguing that federal copyright law completely preempts Lucio's conversion claim. *See* Removal Notice ¶ 6. Complete preemption is a species of federal question jurisdiction. *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002). Generally, courts apply the well-pleaded complaint rule to determine whether an action "arises under" federal law, and thus falls within the court's federal question jurisdiction. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009) (citations omitted). "Under this rule, a claim arises under federal law 'only [if] a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Id.* (citations omitted). However, the "artful pleading" doctrine operates as a backstop to ensure that a plaintiff cannot "defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 22 (1983). Under this doctrine, "[a]n artfully pleaded state law claim may be recharacterized as a federal claim by the court to which it is removed." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996). "Since its first articulation," "courts have used the artful pleading doctrine in: (1) complete preemption cases, and (2) substantial federal question cases." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (citations omitted). Only the first category

---

[3] 28 U.S.C. § 1446(c)(1) also imposes a one-year outer limit on non-CAFA diversity removals.

[4] Again, subject to the one-year bar for non-CAFA diversity removals. 28 U.S.C. § 1446(c)(1)

matters here, as Defendants ground their basis for removal in complete copyright preemption.

Though not yet addressed by the Ninth Circuit, every circuit court to have faced the issue has held that the Copyright Act completely preempts state law claims, however styled, when those claims are, in substance, asserting copyright infringement. *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012); *Ritchie v. Williams*, 395 F.3d 283, 287 (6th Cir. 2005); *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004); *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 232-33 (4th Cir. 1993); *see also* Nimmer & Nimmer, Nimmer on Copyright (2009) § 12.01[A][1][d][ii], at 12-16-20. In reaching this conclusion, the circuit courts point to the Copyright Act's broad preemption provision, 17 U.S.C. § 301(a),[5] combined with its creation of a federal right for copyright infringement, *id.* § 501(a), reserved to the exclusive jurisdiction of federal courts, 28 U.S.C. § 1338(a). *See, e.g., Briarpatch Ltd.*, 373 F.3d at 305 ("Given the Supreme Court's approach in [*Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003)], we conclude that it means to extend the complete preemption doctrine to any federal statute that both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action. The Copyright Act does just that."); *Rosciszewski*, 1 F.3d at 232 ("The grant of exclusive jurisdiction to the federal district courts over civil actions arising under the Copyright Act, combined with the preemptive force of § 301(a), compels the conclusion that Congress intended that state-law actions preempted by § 301(a) of the Copyright Act arise under federal law"). Consistent with these well-reasoned circuit court decisions, this Court agrees the Copyright Act completely preempts state-law claims, however styled, if in reality those claims seek relief equivalent to copyright infringement.

In determining whether state law claims are equivalent to copyright infringement claims, the Ninth Circuit uses a two-part test, which asks: (1) does the work upon which the state law claim is based fall within the general subject matter of copyright? And (2) are the rights plaintiff is asserting under state law equivalent to one of the exclusive rights protected by 17 U.S.C. § 106(a)? *See Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 982 (9th Cir. 2011) ("A state law claim is preempted if the rights asserted under state law come within the subject matter of copyright, as described in 17 U.S.C. §§ 102 and 103, and are equivalent to the exclusive rights of copyright owners specified in 17 U.S.C. § 106.") (citations and quotations omitted); *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006) (citing *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001) ("In order for preemption to occur under the federal Copyright Act, two conditions must be satisfied. First, the content of the protected right must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, the right asserted under state

---

[5] § 301(a) reads:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C.A. § 301.

law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act.")).[6]

Generally, the first part of the test will be satisfied where the work upon which the state law claim is based is an original work of authorship fixed in a tangible medium of expression. 17 U.S.C. § 102(a) ("Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression").[7] As relevant here, "[w]orks of authorship include[:] [1] literary works; [2] pictorial, graphic, and sculptural works; [and] [3] sound recordings[.]" *Id.*

The second part of the test is satisfied if the right asserted in the state law claim is equivalent to a copyright infringement action. *Downing*, 265 F.3d at 1003. Among other things, a copyright infringement action will lie where a person, without authorization, reproduces, distributes, performs, displays, or makes derivatives of another person's copyrighted material. 17 U.S.C. §§ 501, 106(a).

Courts apply the "extra element" test to determine whether a state law claim is equivalent to a copyright infringement action. *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004), *opinion amended on denial of reh'g*, 400 F.3d 658 (9th Cir. 2005) ("To survive preemption, the state cause of action must protect rights that are qualitatively different from the rights protected by copyright: the complaint must allege an "extra element" that changes the nature of the action") (citing *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987), *over'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). Under that test, courts ask whether the gravamen of the state law claim – that is, the claim *as it is asserted* – requires proof of an "extra element" that makes it qualitatively different from an infringement claim. *Del Madera Properties*, 820 F.2d at 977 ("To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an 'extra element' which changes the nature of the action."); *Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1190 (C.D. Cal. 2001) *aff'd in part, dismissed in part*, 90 Fed.Appx. 496 (9th Cir. 2003), *as amended on denial of reh'g* (Mar. 9, 2004) ("As this test has been most recently applied, a court should not rely merely on a laundry list of the alleged elements of the state law claims at issue, such that the mere possibility of an 'extra element' protects a claim from preemption. Instead, the court should engage in a fact-specific inquiry into the actual allegations underlying the claims at issue in the case, so as to determine whether the gravamen of the state law claim asserted is the same as the rights protected by the Copyright Act. In other words, the question is whether the state law claims *as they are asserted* are equivalent to a federal copyright claim.") (citations and quotations omitted, emphasis in original). In other words, to survive the "extra elements" test and avoid preemption, the state law claim must allege something more than the reproduction, distribution, performance,

---

[6] While the Ninth Circuit has only applied this test in cases of *defensive*, rather than *complete* preemption, it makes sense to apply the test in complete preemption cases as the question in both scenarios is effectively the same: whether an ostensibly state law claim is really a copyright infringement claim in disguise. Indeed, courts within this circuit have repeatedly applied the two-part test to determine whether the Copyright Act completely preempts a state law claim. *See, e.g., Baby Moose Drawings, Inc. v. Valentine*, No. 11-CV-697-JHN(JCGx), 2011 U.S. Dist. LEXIS 72583, at *6 (C.D. Cal. Apr. 1, 2011); *Mattel, Inc. v. Bryant*, 441 F.Supp.2d 1081, 1092 (C.D. Cal. 2005) *aff'd*, 446 F.3d 1011 (9th Cir. 2006); *Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't, Inc.*, 177 F.Supp.2d 1050, 1057 (C.D. Cal. 2001); *Firoozye v. Earthlink Network*, 153 F.Supp.2d 1115, 1123-24 (N.D. Cal. 2001); *Worth v. Universal Pictures, Inc.*, 5 F.Supp.2d 816, 821 (C.D. Cal. 1997).

[7] Broadly speaking, copyright protection also extends to portions of compilations and derivative works original to the author. 17 U.S.C. § 103(a)-(b).

display, or making of derivatives from the plaintiff's copyrightable work. *See, e.g., Dielsi v. Falk*, 916 F.Supp. 985, 992 (C.D. Cal. 1996) (finding claim "clearly preempted by federal copyright law because it [alleged] that Defendants have wrongfully used and distributed Plaintiff's work" and "d[id] not add any additional element" to distinguish itself from a copyright infringement claim).

In applying this test, courts have repeatedly found conversion claims completely preempted by the Copyright Act where they are nothing more than copyright infringement claims in disguise. *See, e.g., Worth*, 5 F.Supp.2d at 823; *Dielsi*, 916 F.Supp. at 992. The test is whether the supposed conversion claim asserts wrongful dispossession of tangible property – like a physical manuscript – and seeks its return (or damages for its tangible value), or instead, whether it seeks damages for wrongfully reproducing or using intangible elements of the property. *See Mktg. Info. Masters, Inc. v. Bd. of Trustees of California State Univ. Sys.*, 552 F.Supp.2d 1088, 1098 (S.D. Cal. 2008) ("While conversion is generally immune from preemption because it involves tangible property, conversion actions seeking only damages for reproduction of the property – not return of tangible property – are [completely] preempted by the Copyright Act"); *Firoozye*, 153 F.Supp.2d at 1130 ("[W]hile a claim for conversion typically involves tangible property and thus may be immune from preemption, where a plaintiff is only seeking damages from a defendant's reproduction of a work – and not the actual return of a physical piece of property – the claim is preempted"); *Worth*, 5 F.Supp.2d at 822-23; *Dielsi*, 916 F. Supp. at 992; *see also* <u>Nimmer on Copyright</u> § 1.01[B][1][I], at 1-56 ("[I]t is generally held that an action for conversion will lie only for wrongful possession of the tangible embodiment of a work, whereas a copyright action must be brought for wrongful use of the intangible artistic property contained therein") (citations omitted). In other words, if a plaintiff claims that a defendant wrongfully obtained physical possession of his or her manuscript and files a lawsuit seeking to get it back (or to recover the value of the paper and binding), then he or she has stated a non-preeempted conversion claim. But if a plaintiff claims a defendant obtained possession of his or her manuscript and files a lawsuit for the value derived from reproducing or using the intangible aspects of the work, then regardless of what the plaintiff calls it, he or she has stated a copyright infringement claim, and that claim is completely preempted. *See Worth*, 5 F.Supp.2d at 823; *Dielsi*, 916 F.Supp. at 992.

While the procedural and jurisdictional limits on removal serve different functions and are subject to different tests, they interplay in an important way when it comes to complete preemption. When the defendant receives a pleading or other paper from which complete preemption may be readily ascertained, the 30-day removal clock immediately starts to run. *See Cantrell v. Great Republic Ins. Co.*, 873 F.2d 1249, 1253-56 (9th Cir. 1989) (remanding action where complete preemption was ascertainable from original complaint but removal came more than 30 days after the complaint was served). If the defendant does not remove within 30 days of that time, removal is untimely, procedurally defective, and susceptible to a timely remand motion. *See, e.g., Habashy v. Farmers Group, Inc.*, No. 11-CV-GAF(PLAx), 2011 U.S. Dist. LEXIS 44035, at *13 (C.D. Cal. Apr. 15, 2011) ("Plaintiff's initial complaint, like his FAC, contained at least one cause of action completely preempted by ERISA[.] Thus, the initial complaint was removable when filed. Defendants were therefore required to remove the action within thirty days of receipt of that initial pleading. 28 U.S.C. § 1446(b). Because they did not, their removal was untimely, and Plaintiff's motion to remand is GRANTED."); *Johnson v. Trans World Airlines, Inc.*, 660 F.Supp. 914, 917 (C.D. Cal. 1987) ("The second issue raised by this removal petition, is whether plaintiff's initial complaint, the 'gravamen' of which is a claim for recovery of benefits due him under an employee

benefit plan, was so completely preempted and 'displaced' by ERISA in 1980, such that defendants should have removed the action on that basis 30 days after receipt of the complaint, or waive the right to remove. The Court believes that this question must be answered in the affirmative.").

### III. Analysis
#### A. *The Removal Was Untimely*

At this point, neither party disputes that Lucio's conversion claim is really a veiled copyright infringement claim subject to complete preemption. The subject matter of the conversion claim is the notes and writings Lucio prepared for the book "Mi Vida Loca." Compl. ¶¶ 13, 19, 45; FAC ¶¶ 21, 37-40, 85-89. And while Lucio recites the boilerplate conversion elements, her pleadings make clear that she is not actually suing to recover physical possession of her notes and writings (or to obtain payment purely for losing the physical objects). Instead, the "gravamen" of her claim is that Defendants "essentially stole" and wrongfully used her notes and writings to create a book that "essentially tracked the manuscript developed by . . . Lucio." Compl. ¶ 19; FAC ¶¶ 38-40. Rather than seeking to recover possession, Lucio seeks money damages, which the initial complaint pegged at $5,000,000, and the FAC described as an untold sum to be proved at trial. Compl. ¶ 48; FAC ¶ 89. Under any normal application of the two-part preemption test, the "conversion" claim is clearly completely preempted. Indeed, as a jurisdictional matter, both parties agree that removal is proper.

The real dispute is when Defendants first received a pleading or "other paper" from which complete preemption could first be ascertained. Though Defendants rely on the FAC to support their argument that the conversion claim is completely preempted, *see* Opp. at 8:12-11:16 (citing FAC, rather than some "other paper" obtained pre-removal, to support argument that conversion claim is completely preempted), they contend they could not definitively ascertain removability for the first time until either June 16, when Lucio served her opposition to Defendants' second demurrer, or June 26, when Lucio served her responses to Defendants' Special Interrogatories, *id.* at 21:17-23:16.

Specifically, Defendants argue that Lucio's responses to two Special Interrogatories – numbers 23 and 83 – cleared up any lingering uncertainty as to complete preemption left by the four corners of Lucio's pleadings. According to Defendants:

> Plaintiff's response to Special Interrogatory #23 . . . implicated Copyright law. Specifically, Plaintiff was alleging that she had added original expression to the writings – a threshold to copyright protection. Thus asserting an intangible right in the notes and writings. See, e.g., Response To Special Interrogatory 23: "I used my experience as a seasoned journalist and television air personality to carry the message through Jenni Rivera's writings. I gave original expression to the writings."
>
> [A]fter reviewing Plaintiff's response to Special Interrogatory #83 . . . it was obvious that Plaintiff is alleging an intangible property right in the notes, writings, and audio tapes, seeking only damages for their reproduction, and not the return of the tangible property embodying the notes and writings. See, e.g., Response To Special Interrogatory 83: "These writings were on Jenni Rivera's computer. I saved them there

> after Jenni Rivera and I met to review chapters for the book project. They were my writings."
>
> Indeed Plaintiff voluntarily saved these notes and writing on Jenni Rivera's computer authorizing Jenni Rivera to use them for her own evaluation and use. Accordingly, Plaintiff could not claim an action for conversion alleging that the defendants wrongfully obtained possession over the notes and writings to publish "Unbreakable" without her permission. Instead, it became obvious that plaintiff is alleging that the defendants wrongfully reproduced the notes and writings without her permission, the essence of a claim for copyright infringement.
>
> Moreover, since Plaintiff was not demanding the return of the computer and or damages for the physical depravation of the notes and writings, it was obvious that Plaintiff was seeking damages for the reproduction of the notes and writings.

Opp. at 21:27-22:25.

The problem with Defendants' argument is that this allegedly new information did not differ from information contained in pleadings or other papers they had already received. In April, Lucio served Defendants with discovery responses asserting that she "added original expression" to the notes, writings, and "rewrites" at issue in the case. *See* Responses to Requests for Admission and Form Interrogatories, Docket No. 16-2, at RFA Nos. 32, 34, 35 & Form Rog Nos. 17.1(32), (34), (35). And her Complaint and FAC made clear that she was suing for the misuse of writings she gave to Flores and saved on Rivera's computer, Compl. ¶ 18-19; FAC ¶¶ 37-40, and that she was not seeking to recover physical property, but instead money damages, which the initial complaint pegged at $5,000,000, and the FAC described as a sum to be proved at trial. Compl. ¶¶ 46-48; FAC ¶ 89.

As a result, Defendants face an inescapable bind. Either this information supports complete preemption, making removal untimely, or it does not support complete preemption, and removal is timely, but the Court lacks subject matter jurisdiction. But Defendants cannot have it both ways.

In truth, while the Court is sympathetic to Defendants' dilemma – not wanting to remove before removability was certain in order to avoid a jurisdictional remand – the Court believes that the case was removable based on the pleadings alone. On their face, the Complaint and FAC clearly indicate that Lucio's conversion claim was really just a copyright claim by another name. At a minimum, however, the case became removable after Lucio served her Request for Admission and Form Interrogatory responses in April. Since Defendants did not remove within 30 days of receiving those responses, removal was untimely and remand is proper. And this is true even though copyright claims fall within the federal court's exclusive jurisdiction, *e.g., Concept Chaser Co. v. Pentel of Am., Ltd.*, No. 11-CV-8262-CAS(JCGx), 2011 U.S. Dist. LEXIS 120908, at *8 (C.D. Cal. Oct. 18, 2011) (remanding case removed on copyright preemption grounds as untimely); *W. States Pathology, Inc. v. Ruffdogs, Inc.*, No. 06-CV-2473-PSF(MJWx), 2007 U.S. Dist. LEXIS 4126, at *10-*11 (D. Colo. Jan. 19, 2007) (remanding case removed on copyright preemption grounds as untimely and explaining that "even though removal here was based on the application of the copyright statute, nothing about the nature of such claims, including the exclusive jurisdiction provision found in 28 U.S.C. § 1338(a), suggests that the time limits of 28 U.S.C. § 1446(b) do not apply"); *Bryant v.*

*Broad. Music, Inc.*, No. 04-CV-730-RO, 2004 U.S. Dist. LEXIS 2890, at *7 (S.D.N.Y. Feb. 25, 2004) (remanding case removed on copyright preemption grounds, in part, as untimely), although, having conceded preemption, Lucio might not like what happens once she gets back to state court.[8]

### B. *The Court Should Decline Sanctions*

Lucio seeks costs, fees, and sanctions under 28 U.S.C. § 1447, 28 U.S.C. § 1927, and Local Rules 11-9 and 83-7. Because the latter three bases were not raised until Lucio's Reply, the Court declines to consider them here. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived"); *United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir. 1993) ("[A] party may not make new arguments in the reply brief"); *Hill v. Opus Corp.*, 464 B.R. 361, 371 (C.D. Cal. 2011) (Morrow, J.) ("[T]he court has discretion to disregard arguments raised for the first time in reply, since it is improper for the moving party to introduce new facts or . . . legal arguments in the reply brief") (citations and quotations omitted).[9]

As for 28 U.S.C. § 1447(c), the statute provides that an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Requiring the payment of fees and costs is appropriate where "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140-41 (2005). "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Instead, the objective reasonableness of a removal depends on the clarity of the applicable law and whether established law "clearly foreclosed" the arguments in support of removal. *Id.* at 1066-67.

The Court would decline a § 1447(c) award in this case. Because the Ninth Circuit has not addressed the issue, there is simply no Ninth Circuit law definitively explaining when complete copyright preemption attaches. Moreover, while the Court believes that preemption is readily apparent from the pleadings, the Court does not find Defendants' opposition unreasonable. Finally, while Lucio attacks Defendants for unreasonably opposing her motion, her counsel's declaration states that Defendants actually agreed to remand the case, but Lucio refused the offer without a corresponding payment because her counsel had already expended 18 hours(!) on the opening brief.

## IV. Conclusion

For the reasons discussed, the Court would REMAND the action but DENY a § 1447 award.

---

[8] It is doubtful whether a state court has jurisdiction over a copyright claim. *See* 28 U.S.C. § 1338(a), (b); *see also Scholastic Entertainment, Inc. v. Fox Entertainment, Inc.*, 336 F.3d 982, 986 (9th Cir. 2003). Moreover, before a plaintiff can sue for copyright infringement, he or she must register the work with the U.S. Copyright Office. *See* 17 U.S.C. § 411.

[9] In any event, even if considered on the merits, the Court would decline sanctions on those bases.